■ LANCASTER DEVELOPMENT, INC., et al., Appellants, v JOAN McDONALD, as Commissioner of Transportation, et al., Respondents. [978 NYS2d 398]—

Egan Jr., J. Appeal from an amended judgment of the Supreme Court (Zwack, J.), entered January 17, 2013 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the petition/complaint.

In 2011, respondent Department of Transportation (hereinafter DOT) solicited bids to reconstruct Exit 122 of State Route 17 in the Town of Wallkill, Orange County and, in conjunction therewith, elected to include a project labor agreement (hereinafter PLA) in the bid specifications for the project.[1] Although petitioner Lancaster Development, Inc., a nonunion shop, submitted the lowest bid, DOT declared Lancaster's bid to be "informal" based upon Lancaster's refusal to abide by the terms of the PLA.[2] In response, Lancaster commenced a combined CPLR article 78 proceeding and action for declaratory judgment to challenge the inclusion of the PLA in the 2011 bid. Supreme Court (Teresi, J.) declared that the subject PLA violated the competitive bidding laws and directed that the project be rebid.

In June 2012, DOT rebid the project as directed, and the bid specifications again included a PLA—one that was based upon a recently commissioned labor/cost analysis. Lancaster elected not to submit a bid and, instead, together with petitioner Empire State Chapter of the Associated Builders and Contractors, Inc. and petitioner Lori Florian, commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking to challenge DOT's inclusion of a PLA in its 2012 bid specifications. Respondents moved to dismiss contending, among other things, that petitioners lacked standing. Supreme Court (Zwack, J.) granted respondents' motion, and this appeal by petitioners ensued.

To establish standing, Lancaster was required to demonstrate that it "suffered an injury in fact, distinct from that of the general public[,] . . . [and] that the injury claimed falls within the zone of interests to be protected by the statute challenged" (*Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587 [1998]; *see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772-774 [1991]; *see also Matter of Ricket v Mahan*, 97 AD3d 1062, 1063 [2012]). This it failed to do. As a starting point, inasmuch as the harm purportedly suffered by Lancaster was occasioned not by its failure to secure the winning bid for the project (*compare Maraia v Orange Regional Med. Ctr.*, 63 AD3d 1113, 1115 [2009]) but, rather, by its entirely voluntary decision to forgo submitting a bid at all, we are not persuaded that Lancaster has suffered an injury in

---

1. "[A] PLA is a prebid contract between a construction project owner and a labor union (or unions) establishing the union as the collective bargaining representative for all persons who will perform work on the project" (*Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56, 65 [1996]).

2. An "informal" bid is, in essence, a bid that does not conform to the underlying bid specifications.

fact distinct from that of the public at large. Moreover, even assuming that Lancaster met this aspect of the standing test, it is clear that any economic injury or lost business opportunity suffered by Lancaster does not fall within the zone of interests to be protected by the competitive bidding statutes (*see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d at 587-588), which were designed to "protect[ ] . . . the public fisc by obtaining the best work at the lowest possible price" and prevent "favoritism, improvidence, fraud and corruption in the awarding of public contracts" (*Matter of New York State Correctional Officers & Police Benevolent Assn., Inc. [New York State Dept. of Civ. Serv.]*, 70 AD3d 240, 243-244 [2009] [internal quotation marks and citation omitted]; *see Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth.*, 66 NY2d 144, 148 [1985]). Such statutes are not intended to benefit individual bidders (*see Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth.*, 66 NY2d at 148; *Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 207 AD2d 26, 30-31 [1994], *affd* 88 NY2d 56 [1996]), and "[t]he fact that certain nonunion contractors may be disinclined to submit bids" where, as here, a PLA is included in the contract specifications does not preclude competition such that the "competitive bidding mandate" is offended (*Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56, 71 [1996]). We therefore conclude that Lancaster failed to demonstrate that it has standing under the traditional two-prong test (*cf. Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d at 587-588).

Although a limited exception indeed has been carved out where the nonbidding entity can demonstrate that it was precluded from submitting any bid at all (*see Matter of Kick v Regan*, 110 AD2d 934 [1985], *lv denied* 66 NY2d 601 [1985]; *Albert Elia Bldg. Co. v New York State Urban Dev. Corp.*, 54 AD2d 337 [1976]), these cases are readily distinguishable[3] and Lancaster's attempt to fall within the exception is unpersuasive.

---

**3.** In *Kick*, we concluded that the corporate petitioner had standing to maintain the subject proceeding because it would have bid on the project had the underlying request for proposal not been withdrawn (*see Matter of Kick v Regan*, 110 AD2d at 935). Similarly, in *Elia*, the Fourth Department permitted the petitioner, a nonbidding entity, to challenge the municipality's decision to award additional work to the successful bidder because the municipality, by awarding such work pursuant to a contract change order, circumvented what otherwise should have been a competitive bidding process, thereby precluding the petitioner from submitting a bid in the first instance (*see Albert Elia Bldg. Co. v New York State Urban Dev. Corp.*, 54 AD2d at 341-342).

Simply put, neither the alleged illegality of the PLA itself (an issue we do not address) nor its inclusion in the 2012 bid specifications deprived Lancaster of the opportunity to bid on the project.[4] Lancaster may have elected not to submit a bid because, as a nonunion shop, it considered the PLA to be inconsistent with its business model and practices or because the inclusion of the PLA otherwise made the project less attractive, but the PLA itself did not preclude Lancaster from bidding altogether—as evidenced by, for example, Lancaster's participation in the prior round of bidding. Accordingly, Supreme Court properly concluded that Lancaster lacked standing to maintain this proceeding/action.

Petitioners' remaining contentions do not warrant extended discussion. In light of our determination that Lancaster—as Empire's contractor member—lacks standing in its own right, Empire's organizational standing claim necessarily must fail (*see Matter of New York Propane Gas Assn. v New York State Dept. of State*, 17 AD3d 915, 916 [2005]). Similarly, inasmuch as a review of Florian's affidavit reveals that she is challenging DOT's decision to include a PLA in the underlying contract and not the unlawful expenditure of any funds disbursed pursuant thereto, Supreme Court properly declined to afford her taxpayer standing under State Finance Law § 123-b (*see Matter of Vector Foiltec, LLC v State Univ. Constr. Fund*, 84 AD3d 1576, 1578 [2011], *lv denied* 17 NY3d 716 [2011]; *Matter of Humane Socy. of U.S. v Empire State Dev. Corp.*, 53 AD3d 1013, 1016 [2008], *lv denied* 12 NY3d 701 [2009]; *compare Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813-814 [2003], *cert denied* 540 US 1017 [2003]). Finally, we agree with Supreme Court that inasmuch as a losing bidder could have commenced suit to challenge the inclusion of the PLA in the bid specifications, petitioners failed to demonstrate the existence of an impenetrable barrier to judicial review (*see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d at 589; *Matter of Vector Foiltec, LLC v State Univ. Constr. Fund*, 84 AD3d at 1578-1579). Accordingly, there is no basis upon which to afford petitioners common-law taxpayer standing.

Rose, J.P., Spain and Garry, JJ., concur. Ordered that the amended judgment is affirmed, without costs.

---

4. Indeed, the PLA expressly provided that "all [c]ontractors . . . shall be eligible to compete for contracts and subcontracts without regard to whether they are otherwise parties to an existing collective bargaining agreement" and, further, precluded the collective bargaining agent from discriminating in job referrals based upon "the applicant's union membership, or lack thereof."